IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DIANA ROLLINS, EXECUTOR OF THE
ESTATE OF MILLARD ANTHONY ROLLINS,

      Plaintiff,

v.                                                                    Civil Action No. 3:15cv66

KJELLSTROM & LEE, INC.,
and
MUTUAL OF OMAHA
INSURANCE COMPANY,

      Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Defendants Kjellstrom & Lee, Inc. ("K&L") and

Mutual of Omaha Insurance Company's ("Mutual of Omaha") (collectively, the "Defendants")

Motions to Dismiss the matter against them pursuant to Federal Rule of Civil Procedure

12(b)(6)[1] and Plaintiff Diana Rollins' Motion to Remand pursuant to 28 U.S.C. § 1447(c).[2]

(ECF Nos. 3, 6, 12.) The parties filed responses in opposition to the motions, and the moving

parties filed replies. (ECF Nos. 10, 11, 14–19.) The matter is ripe for disposition.

The Court dispenses with oral argument because the materials before the Court

adequately present the facts and legal contentions, and argument would not aid the decisional

---

[1] Fed. R. Civ. P. 12(b)(6) allows a party to seek dismissal for "failure to state a claim upon which relief can be granted."

[2] 28 U.S.C. § 1447(c) states in relevant part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[3] For the reasons that follow, the Court will deny the Motion to Remand, grant the Motions to Dismiss, and grant Rollins leave to amend.

## I.  Standards of Review

### A.    Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Instead, a plaintiff must assert

---

[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Complaint raises state law causes of action for breach of contract, but Defendants removed the action, arguing that the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, preempts her state law claims. The Court discusses its jurisdiction in detail, *infra*.

facts sufficient "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555

(citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely

"conceivable." *Id.*   In order for a claim or complaint to survive dismissal for failure to state a

claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim."

*Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v.*

*Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281

(4th Cir. 2002)).

     "If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to

and not excluded by the court, the motion must be treated as one for summary judgment under

Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that

is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*,

149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).  However,

"a court may consider official public records, documents central to plaintiff's claim, and

documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion

into one for summary judgment] so long as the authenticity of these documents is not disputed."

*Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citing *Alt. Energy, Inc. v.*

*St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190

F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va.

1995)).

     Rollins attaches to her Complaint:  (1) a letter dated June 14, 2000 from Jim Pritchett, Jr.,

Senior Vice President of K&L, to her late husband, Millard Anthony Rollins ("Mr. Rollins") (the

"Offer Letter") (Compl. Ex. A, ECF No. 1-3); (2) the Group Term Life and AD&D Insurance

Summary of Coverage (the "Summary") (Compl. Ex. B, ECF No. 1-3); (3) a Certificate of

Insurance issued by United of Omaha Life Insurance Company ("United of Omaha") to K&L (the "Certificate") (Compl. Ex. C, ECF No. 1-3); and, (4) a portion of K&L's Handbook for Salaried Employees (the "Handbook") (Compl. Ex. D, ECF No. 1-3).

The Defendants attach to the Notice of Removal the insurance policy issued by United of Omaha to K&L (the "Policy"), its summary plan description ("Summary Plan Description"), and its summary of coverage ("Summary of Coverage") (Not. Removal Ex. 5, ECF Nos. 1-7, 1-8). The Summary Plan Description states that it provides information required to be "furnished to eligible participants in an employee benefits plan" under ERISA. (Not. Removal Ex. 5, Summ. Plan Description 41, ECF No. 1-8). The Summary Plan Description identifies K&L as the Plan Administrator. *Id.*

The Court will consider all the documents filed. Rollins sufficiently referred to all of her exhibits in her Complaint, as well as the Policy and related documents attached to the Notice of Removal. The documents are central to Rollins' claims, and neither party disputes their authenticity. The Court may thus consider these documents. *See Witthohn*, 164 F. App'x at 396–97 (citations omitted).

## B.   Remand Pursuant to 28 U.S.C. § 1447(c), Removal via 28 U.S.C. § 1441(a), and Federal Question Jurisdiction under 28 U.S.C. § 1331

"Under the removal statute, 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant' to federal court." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting 28 U.S.C. § 1441(a)). "One category of cases of which district courts have original jurisdiction is '[f]ederal question' cases: cases "arising under the Constitution, laws, or treaties of the United States."" *Id.* (alteration in original) (quoting 28 U.S.C. § 1331). A defendant may remove a state action to federal court if the district court would have "original jurisdiction" over the action. *Met. Life Ins.*

4

*Co. v. Taylor*, 481 U.S. 58, 63 (1987) (quoting 28 U.S.C. § 1441(a)). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Generally, whether subject matter jurisdiction exists turns on the plaintiff's "'well-pleaded complaint.'" *Davila*, 542 U.S. at 207 (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9–10 (1983)). A federal defense, because it does not appear on the face of the complaint, cannot usually provide a basis for removal. *Taylor*, 481 U.S. at 63 (citation omitted); *Smith v. Logan*, 363 F. Supp. 2d 804, 808 (E.D. Va. 2004) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). "However, if a state law cause of action has been *completely* preempted by federal law, any claim based on the completely preempted state law is considered a federal claim arising under federal law." *Smith*, 363 F. Supp. 2d at 808 (citing *Caterpillar*, 482 U.S. at 393). Accordingly, a defendant may remove a state action to federal court if the claim comes within the scope of the preempting federal law, "even if pleaded in terms of state law," because the cause of action "is in reality based on federal law." *Davila*, 542 U.S. at 207–08 (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). Because the interplay between ERISA preemption doctrines becomes complicated in removal actions, *see Gross v. St. Agnes Health Care, Inc.*, No. ELH-12-2990, 2013 WL 4925374, at *7 (D. Md. Sept. 12, 2013), the Court will address the preemption issues in detail below.

## II. Procedural and Factual Background

### A.   Summary of Allegations in Rollins' Complaint[4]

K&L employed Rollins' late husband, Millard Anthony Rollins ("Mr. Rollins"), for over

28 years. June 14, 2000, K&L Senior Vice President Jim Pritchett, Jr. sent a letter to Mr. Rollins

offering the position of Superintendent, detailing that K&L would provide Mr. Rollins with

various benefits including "[l]ife insurance at twice [his] annual salary." (Offer Letter 1.)

K&L's Handbook also stated that K&L "provides fully paid life insurance to all salaried full

time employees upon their first day of employment. This life insurance is in an amount equal to

[two] times [the employee's] annual base salary." (Compl. ¶ 21; Handbook VI-3.)

In 2007, Mr. Rollins obtained the United of Omaha Policy through K&L.[5] The Policy's

Summary includes that, effective January 1, 2008, "[a]ll eligible salaried employees earning

$100,000 or more" were eligible to receive "an amount of life insurance equal to [two] times

your annual salary, up to $200,000." (Summary 1 (capitalization corrected).) Mr. Rollins

received the Certificate issued by United of Omaha that stated the Policy provided him with life

---

[4] For purposes of the Motions, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Rollins. *Matkari*, 7 F.3d at 1134.

[5] The Complaint generally refers to the insuring entity as "Mutual of Omaha." The Removal Notice also refers to the defendant as "Mutual of Omaha." (ECF No. 1.) Rollins asserts that Mutual of Omaha administered the Policy. However, the documents attached to the Complaint suggest that United of Omaha administered the Policy. To this end, in a later filing, Mutual of Omaha moves the Court to dismiss it as an improper party. Rollins later appears to recognize that United of Omaha, not Mutual of Omaha, administered the Policy. (*See* Rollins Mem. Opp. [Mut.] Mot. Dismiss 5 (discussing the "United of Omaha Policy"), 17 (requesting to amend her Complaint "for a mistake concerning the proper party's identity"), ECF No. 10.)
The Court will dismiss all claims against Mutual of Omaha entirely and grant Rollins leave to amend to correctly name the intended party. For ease of the reader, the Court will refer to the insuring entity as United of Omaha.

insurance benefits of "an amount equal to [two] times [his] annual salary, up to $200,000."
(Certificate 2 (capitalization corrected).)

On November 10, 2011, Mr. Rollins passed away. In 2010, Mr. Rollins' annual base
salary was $175,193.98. For the ten months in 2011 prior to his death, Mr. Rollins' salary was
$141,612.56. In early December 2011, Rollins met with K&L President Peter S. Alcorn,
Comptroller Derrick Vaughan, and Benefits Manager Stacy Whitlow. At the meeting, the K&L
representatives informed Rollins that the Policy was subject to a $200,000 "cap." Prior to this
meeting, both the Rollinses had believed that the "cap" on the life insurance benefits applied to
the salary, not to the benefits. In fact, this understanding extended not only to the Rollinses, but
also to the K&L representatives, who informed Rollins that they had intended to provide Mr.
Rollins with a life insurance benefit two times his salary, up to a salary cap of $200,000, for a
total payout of up to $400,000. Instead, upon Mr. Rollins' death, United of Omaha paid Rollins
$200,591.78, and K&L paid Rollins $4,413.00. Rollins asserts that, as the beneficiary of the
Policy, she is entitled to a total payment of $350,387.96.[6] After subtracting the funds already
received, she claims a deficit owed by Defendants in the amount of $145,383.18.

Rollins asserts in Count I that K&L and Mutual of Omaha breached the express, written
contracts formed with Mr. Rollins through the Offer Letter, the Summary, the Certificate, and the
Handbook. Rollins also claims in Count II that K&L breached the oral contract established with
Mr. Rollins via the Offer Letter, the Summary, the Certificate, the Handbook, and other oral
representations. She seeks $145,383.18 plus interest.

---

[6] It appears that Rollins bases her expected payout on Mr. Rollins' 2010 salary of
$175,193.98. The Court notes for clarity's sake that double that salary would amount to twenty
cents less than alleged in Paragraph 35 of the Complaint. ($350,387.56 / 2 = $175,193.78).

7

**B.**   **Procedural History**

On December 1, 2014, Rollins filed this action in the Circuit Court of the City of Richmond (the "Richmond Circuit Court"), alleging one count of breach of a written contract against K&L and Mutual of Omaha and one count of breach of oral contract against K&L.  On January 29, 2015, Mutual of Omaha filed its responsive pleadings, and on February 3, K&L filed its responsive pleadings.  On February 4, 2015, Defendants jointly removed the action to this Court, contending that this Court has original jurisdiction over this federal question case involving ERISA.

Both K&L and Mutual of Omaha filed Motions to Dismiss Rollins' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 3, 6.)  Both Defendants assert that ERISA preempts Rollins' state law breach of contract claims, giving this Court federal question jurisdiction and requiring the Court to dismiss Rollins' claims as pled.  They also argue that Rollins has no standing as the executor of Mr. Rollins' estate to bring suit under ERISA or that she has a right to a jury trial.  On March 6, 2015, Rollins filed a Motion to Remand this action to the Richmond Circuit Court, arguing that ERISA does not preempt her claims and that she had adequately pled her state causes of action.  (ECF No. 12.)  All parties have filed appropriate responses in opposition to and replies in support of the motions.

### III. Analysis

A.    **Applicable Law: ERISA Preemption**[7]

"ERISA comprehensively regulates, among other things, employee welfare benefit plans

that, 'through the purchase of insurance or otherwise,' provide medical, surgical, or hospital care,

or benefits in the event of sickness, accident, disability, or death." *Pilot Life Ins. Co. v. Dedeaux*,

481 U.S. 41, 44 (1987) (citing 29 U.S.C. § 1002(1)). Congress enacted ERISA to protect the

interests of participants in employee benefit plans by providing a "uniform regulatory regime

over employee benefit plans." *Davila*, 542 U.S. at 208; *see Marks v. Watters*, 322 F.3d 316, 322

(4th Cir. 2003). To that end, ERISA "includes expansive pre-emption provisions . . . which are

intended to ensure that employee benefit plan regulation would be 'exclusively a federal

concern.'" *Davila*, 542 U.S. at 208 (citations omitted). Thus, Congress reserved to the federal

government the "'sole power to regulate the field of employee benefit plans.'" *Marks*, 322 F.3d

at 322 (quoting *Pilot Life*, 481 U.S. at 46). ERISA contemplates two types of preemption:

---

[7] The Motions to Dismiss and Remand involve the same primary question: whether ERISA preempts Rollins' Virginia state law claims. The law related to the motions interconnects significantly. In fact, Rollins directly quotes most of her memoranda in opposition to the Defendants' Motions to Dismiss in her memorandum in support of her Motion to Remand. *Compare* Mem. Opp. [Mut.] Mot. Dismiss 3–6, 8–16, ECF No. 10, *and* Mem. Opp. [K&L] Mot. Dismiss 3–6, 8–16, 18–19, ECF No. 11, *with* Mem. Supp. Mot. Remand 2–5, 7–16, 19–21, ECF No. 13.

   The Court notes, however, that Rollins attaches a new exhibit to her reply in support of the Motion to Remand. In her reply, she also introduces arguments not previously raised and cited over 30 extra cases to support the new arguments. Because, in reply, Rollins raises facts and legal arguments to which the Defendants cannot fully respond, the Court will not consider these arguments or Rollins' new exhibit. *See Seneca Ins. Co. v. Shipping Boxes I, LLC*, 30 F. Supp. 3d 506, 512 (E.D. Va. 2014) (declining consideration of arguments raised about a claim only in reply because opposing party did not have a full opportunity to respond); *Vollette v. Watson*, 937 F. Supp. 2d 706, 726 (E.D. Va. 2013) (rejecting attempt to assert new legal and factual arguments in reply while noting that the opposing party would be prejudiced in its ability to respond).

Section 514 *conflict* preemption, codified at 29 U.S.C. § 1144(a); and, Section 502 *complete* preemption, codified at 29 U.S.C. § 1132.

**1.**     **Conflict Preemption under ERISA's Section 514, 29 U.S.C. § 1144(a), Does Not Always Give Rise to Removal Jurisdiction**

"Ordinary conflict preemption under ERISA § 514 is set forth in 29 U.S.C. 1144(a):[8] state laws are superseded insofar as they 'relate to' and ERISA plan." *Moon v. BWX Techs. Inc.*, 498 F. App'x 268, 272 (4th Cir. 2012) (footnote omitted) (citation omitted). When presented with claims under state law that are said to implicate ERISA, a court must determine whether § 514 preempts the claims. *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 187 (4th Cir. 2002). To do so, a court must first determine whether an "employee welfare benefit plan"

---

[8] 29 U.S.C. § 1144(a) provides, in relevant part:

> [T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under Section 1003(b) of this title.

28 U.S.C. § 1144(a).

The Supreme Court of the United States has outlined three types of laws that ERISA preempts: (1) "laws that mandate[] employee benefit structures or their administration;" (2) "laws that bind employers or plan administrators to particular choices or preclude uniform administrative practice;" and, (3) "laws providing alternate enforcement mechanisms for employees to obtain ERISA plan benefits." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468–69 (4th Cir. 1996) (alteration in original) (citations omitted) (internal quotation marks omitted).

10

exists.[9] *Robinson*, 2009 WL 3233474, at *3. A court must next decide whether the state

statutory or common law claim "relates to"[10] an employee benefit plan. *Griggs*, 237 F.3d

at 377–78.

Importantly, § 514's *conflict* preemption provides only a federal defense to a state law

claim related to employee benefit plans. *Darcangelo*, 292 F.3d at 186–87. "ERISA pre-emption

[under § 514], without more, does not convert a state claim into an action arising under federal

law." *Taylor*, 481 U.S. at 64 (citing *Franchise Tax Bd.*, 463 U.S. at 25–27). When "ERISA is

simply asserted as a defense to a state law claim, the state claim is not converted in a federal

claim," and no federal question giving rise to removal jurisdiction exists. *Darcangelo*, 292 F.3d

at 187. As such, if a welfare plan exists and the state law relates to that plan, conflict

---

[9] The United States Court of Appeals for the Fourth Circuit defines an "employee welfare benefit plan" as: "(1) a plan, fund or program (2) established or maintained (3) by an employer . . . (4) for the purpose of providing medical, surgical, hospital care, [or] sickness . . . benefits (5) to participants or their beneficiaries." *Robinson v. AIG Life Ins. Co.*, No. 4:09cv105, 2009 WL 3233474, at *3 (E.D. Va. Oct. 7, 2009) (quoting *Madonia v. Blue Cross & Blue Shield of Va.*, 11 F.3d 444, 446 (4th Cir. 1993)) (internal quotation marks omitted) (alterations in original).
  To determine whether a "plan, fund or program" exists, the Fourth Circuit instructs courts to examine the "surrounding circumstances" to discern whether a "reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Madonia*, 11 F.3d at 447 (citation omitted). The Fourth Circuit endorses "the well-established rule that 'payment of premiums on behalf of . . . employees is substantial evidence that a plan, fund or program [was] established.'" *Id.* (alterations in original) (quoting *Kidder v. H & B Marine, Inc.*, 932 F.2d 347, 353 (5th Cir. 1991)).

[10] A state law "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983) (footnote omitted). The state law need not directly refer to such plans or be designed to affect the plans. *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 377–78 (4th Cir. 2001). Courts refer to ERISA's conflict preemption in § 514 as "deliberately expansive," *Pilot Life*, 481 U.S. at 46, "broad," *id.* at 47, "comprehensive," *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 558 (4th Cir. 1994), and "quite sweeping," *Robinson*, 2009 WL 3233474, at *3. However, § 514's preemptive effect is not limitless. *Shaw*, 463 U.S. at 100 n.21. "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* (citation omitted).

"preemption under § 514 precludes prosecution of the preempted state-law claim" and the claim must be dismissed. *Marks*, 322 F.3d at 323.

> **2.    Complete Preemption under ERISA's Section 502(a), 29 U.S.C.**
> **§ 1132, Gives Rise to Removal Jurisdiction When a State Law Claim**
> **Duplicates ERISA's Exclusive Civil Enforcement Remedy**

"In contrast, 'complete preemption' [gives] rise to removal jurisdiction. Properly understood as a jurisdictional doctrine, complete preemption arises only when plaintiff's state law claims come within the scope of ERISA's civil enforcement provision, found at § 502(a) of the Act and codified at 29 U.S.C. § 1132(a)."[11] *Moon*, 498 F. App'x at 272 (citing *Taylor*, 481 U.S. at 65–66). Thus, if Rollins' "claims are essentially § 502(a) [civil enforcement] claims brought under the guise of state law, ERISA completely preempts the purported state law claims and converts them into what they actually are:  federal claims." *Id.* at 272–73; *see also id.* at 273 n.6 (noting that completely preempted state law claims actually constitute "mislabeled" federal claims, meaning that, as a corollary to the well-pleaded complaint rule, the federal claims should appear on the face of the complaint) (citations omitted).

This exclusive remedy means that § 502 completely preempts all state law claims "within its scope." *Darcangelo*, 292 F.3d at 187. A claim falls within the scope of § 502 when a "plan participant or beneficiary" brings suit "to, among other things, recover benefits, enforce rights conferred by an ERISA plan, remedy breaches of fiduciary duty, clarify rights to benefits, and enjoin violations of ERISA." *Marks*, 322 F.3d at 323; *see* 29 U.S.C. § 1132(a)(1)–(4). In short, "'complete preemption' exists when the preempted state-law claim falls within the scope of the

---

[11] To enforce the preemptive effect of § 514, ERISA contains a unique provision in § 502, which "set[s] forth a comprehensive civil enforcement scheme." *Davila*, 542 U.S. at 208 (quoting *Pilot Life*, 481 U.S. at 54); *see* 29 U.S.C. § 1132. "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive . . . ." *Davila*, 542 U.S. at 209. Thus, § 502 provides the exclusive remedy for ERISA claims. *Id.*

exclusive civil enforcement mechanism of § 502, in which case the state-law claim is converted into a federal cause of action removable to federal court." *Marks*, 322 F.3d at 323.

**B.    ERISA §§ 514 and 502 Preempt Rollins' Claims, Require Dismissal of Rollins' State Claims in this Federal Court, and Allow for Removal**

The Court will deny Rollins' Motion to Remand and will grant Defendants' Motions to Dismiss because ERISA completely preempts Rollins' state law breach of contract claims. Rollins' claims all relate to an employee welfare benefit plan, and ERISA provides her exclusive remedy.[12]

**1.    An Employee Welfare Benefit Plan Exists**

The Court begins with the necessary recognition that Congress intended to reserve to the federal government exclusive regulation of employee welfare benefit plans. *Pilot Life*, 481 U.S. at 45–46. Thus, ERISA preempts any state statutory or common law cause of action "related to" an "employee [welfare] benefit plan." *Griggs*, 237 F.3d at 378. The Court must examine first whether an employee welfare benefit plan exists in this case. The Court finds that such a plan does exist. The parties do not dispute that K&L, an employer, established or maintained the Policy[13] for the purpose of providing medical and sickness benefits to participants or their beneficiaries. *See Madonia*, 11 F.3d at 447. (*See* Certificate of Ins. 2–3 (outlining life and health insurance); Summary 7 (designating Rollins as the beneficiary under Mr. Rollins' Policy).)

---

[12] The Court addresses § 514 factors prior to assessing § 502 preemption (and therefore this Court's jurisdiction), because the § 514 factors are a necessary prerequisite to § 502 findings. In any event, this Court finds, in Section III.B.3, *infra*, that § 502's complete preemption gives the Court federal question jurisdiction.

[13] Rollins spends extensive time arguing the ways in which the Defendants and the Policy did not comply with ERISA. Rollins misapprehends the test for an employee welfare benefit plan. If a plan meets the test as articulated above, it makes no difference whether the plan complied with ERISA's requirements.

The parties contest, however, whether a "plan, fund, or program" exists. It does. First, the Summary Plan Description states that it provides information required to be "furnished to eligible participants in an employee benefits plan" under ERISA. (Not. Removal Ex. 5, at 41, ECF No. 1-8). The Summary Plan Description identifies K&L as the Plan Administrator. *Id.* This record clearly suggests that an employee welfare benefit plan stands before this Court.

Even if this Court were to turn to the "surrounding circumstances" to determine, from a reasonable person's viewpoint, "the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits" that might constitute an employee welfare benefit plan, this record demonstrates that the necessary finding could be made. *Madonia*, 11 F.3d at 447. Even viewing Plaintiff's allegations favorably, Rollins' attempt to characterize life insurance as a lump-sum one-off payment rather than a plan provision fails. *See Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 14 n.9 (1987) ("While death benefits may represent a one-time payment from the perspective of the beneficiaries, the employer clearly foresees the need to make regular payments to survivors on an ongoing basis. The ongoing, predictable nature of this obligation therefore creates the need for an administrative scheme to process claims and pay out benefits, whether those benefits are received by beneficiaries in a lump sum or on a periodic basis.").

Here, K&L provided "fully paid life insurance" to all its full-time employees. (Handbook, VI-3.) K&L's payment of its employees' life insurance premiums provides "substantial evidence" that a plan was established. *See Madonia*, 11 F.3d at 447. The Policy itself shows that "the intended benefit is [life and accidental death and dismemberment coverage]; the beneficiaries include [K&L's] employees who seek help with their [life] insurance payments; the source of financing is [K&L]; and the procedure for receiving benefits is

14

submission of claims to [K&L]." *Id.* (*See* Policy 8 (benefits and beneficiaries outlined), 12 (procedure to receive benefits).) Accordingly, because the surrounding circumstances demonstrate that the "parameters of [the Policy] are readily ascertainable," a plan exists here. *See Madonia*, 11 F.3d at 447.

### 2. Rollins' State Law Breach of Contract Claims "Relate To" the Employee Welfare Benefit Plan

Having found the existence of an employee welfare benefit plan, the Court must next examine whether Rollins' state law breach of contract claims "relate to" that plan. While the Court should not take the phrase "related to" to its extreme, *Shaw*, 464 U.S. at 100 n.21, the Court must also heed the notion that a claim relates to a plan "'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Phoenix Mut.*, 30 F.3d at 560 (quoting *Pilot Life*, 481 U.S. at 47). Here, Rollins' claims for breach of written contract and breach of oral contract relate to the employee welfare benefit plan because they seek alternative enforcement methods to ERISA's exclusive enforcement mechanism. *See Coyne & Delany*, 98 F.3d at 1468–69.

Finding that Rollins' claim meets the "relation to" test is not a close call. ERISA's § 502 provides the "exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits." *Pilot Life*, 481 U.S. at 52. Courts regularly find that ERISA preempts breach of contract actions alleging additional or alternative mechanisms to seek benefits owed through a plan. *See, e.g., Puller v. Unisource Worldwide, Inc.*, No.3:08-cv-813, 2009 WL 331291, at *5 (E.D. Va. Feb. 9, 2009) ("When a plaintiff brings an action to enforce a contract and that contract is an ERISA-covered plan, it 'is of necessity an alternative enforcement mechanism for ERISA § 502 and is therefore 'relate[d] to' an ERISA plan and preempted.'" (alteration in original) (quoting *Darcangelo*, 292 F.3d at 195)); *Kress v.*

15

*Food Emp'rs Labor Relations Ass'n*, 217 F. Supp. 2d 682, 685–86 (D. Md. 2002); *cf. Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1480 (4th Cir. 1996) (finding § 514 preemption likely in breach of contract claim even though plaintiff sought ERISA benefits from employer directly and not through the plan). Such claims merely seek to provide alternate enforcement mechanisms to obtain ERISA plan benefits, a remedy forbidden by ERISA. *Coyne & Delany*, 98 F.3d at 1468–69. Accordingly, because a plan exists and Rollins' claims "relate to" that plan, conflict preemption under § 514 is established. The Court dismisses Rollins' state law breach of contract claims for failure to state a claim pursuant to Rule 12(b)(6), because ERISA § 514 preempts Rollins' state law claims.

### 3. Rollins Meets All Test Requirements to Establish Complete Preemption

The Fourth Circuit "has recognized three 'essential requirements' for complete preemption." *Moon*, 498 F. App'x at 273 (quoting *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 372 (4th Cir. 2003). The case before this Court evinces all the conditions for complete preemption as articulated by the Fourth Circuit:

> (1) the plaintiff must have standing under § 502(a) to pursue [her] claim; (2) [her] claim must "fall[ ] within the scope of an ERISA provision that [she] can enforce via § 502(a)"; and[,] (3) the claim must not be capable of resolution "without an interpretation of the contract governed by federal law," i.e., an ERISA-governed employee benefit plan.

*Id.* (third alteration in original) (citation omitted).

Here, Rollins, a plan beneficiary,[14] brings suit "to recover benefits due under the [Policy]." *Pilot Life*, 481 U.S. at 52. Second, Rollins' breach of contract actions fall with the

---

[14] Defendants briefly argue, with little legal support, that Rollins lacks standing to bring suit as the executor of Mr. Rollins' estate. However, the Complaint plainly states, and the documents clearly show, that Rollins is also a beneficiary of the Policy, giving her standing to bring an ERISA suit. *See Madonia*, 11 F.3d at 448.

ambit of a § 502(a) civil enforcement provision because she seeks to enforce her reading of an ERISA plan in order to recover benefits, or in order to clarify her rights to benefits due under the terms of an ERISA plan. *See Marks*, 322 F.3d at 323. Finally, Rollins' claim is not capable of resolution without an interpretation of the ERISA-government employee benefit plan before the Court.[15]

Accordingly, § 502 completely preempts Rollins' claims as alleged. Therefore, federal question jurisdiction has been established, and the Court denies Rollins' Motion to Remand.

**C.     Rollins Must Be Granted Leave to Amend Her Complaint under ERISA**

A finding that ERISA preempts Rollins' claims, thus allowing the Court to exercise federal question jurisdiction and requiring dismissal of her state law claims, does not end the Court's inquiry. Should the Court determine her claim to be an ERISA matter, Rollins asks for leave to file an Amended Complaint. The Defendants make no real effort to argue that Rollins should not be granted the opportunity to plead her causes of action under ERISA. Rollins must be granted leave to amend her complaint to comply with the ERISA enforcement statutes. *See Makar v. Health Care Corp. of the Mid-Atl.*, 872 F.2d 80, 83 (4th Cir. 1989) (finding plaintiff's claims preempted under ERISA and remanding the case to be dismissed without prejudice to

---

[15] The Court recognizes that in *Davila,* decided one year after *Sonoco,* the Supreme Court articulated an abbreviated, two-part test under which complete preemption should be evaluated. *Davila,* 542 U.S. at 210. Under *Davila,* in order to evaluate complete preemption, a Court should look to whether "an individual, at some point in time, could have brought his [or her] claim under ERISA § 502[ ]" and whether "there is no other independent legal duty that is implicated by a defendant's actions." *Id.*

*Sonoco* has not been called into question, and this Court's finding does not change under *Davila* in any event. This Court discusses the *Sonoco* standard because its three-part evaluation essentially elucidates the broad parameters as to whether an individual "could have brought" an ERISA claim that constitutes the first part of the *Davila* test. Moreover, the case at bar does not involve any "independent legal duty," such as duties arising under the Texas Health Care Liability Act that the *Davila* court considered. No "legal duty . . . independent of ERISA or the plan terms" is alleged here, *Davila,* 542 U.S. at 210, meaning that the Court would not undertake any analysis under part two of the *Davila* test in any event.

17

allow plaintiff to pursue remedies under ERISA); *Robinson*, 2009 WL 3233474, at *4 (dismissing breach of contract claim as preempted by ERISA but granting plaintiff "leave to file an amended complaint raising a claim under ERISA").

Accordingly, while the Court will dismiss Rollins' claims,[16] it will also allow Rollins the opportunity to file an amended complaint that raises proper ERISA claims.  Indeed, the Court already has entered a scheduling order directing further conduct of the parties in this case.  (ECF No. 23.)

### IV.  Conclusion

For the foregoing reasons, the Court denies Rollins' Motion to Remand.  (ECF No. 12.) The Court grants the Defendants' Motions to Dismiss.  (ECF Nos. 3, 6.)  The Court grants Rollins leave to amend her Complaint.

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: 5/15/15
Richmond, Virginia

---

[16] Because the Court dismisses the Complaint before it, any argument about the right to a jury trial is moot.

18